Good morning, Your Honors. May it please the Court, I'm Daniel Dysack. I represent the plaintiff and appellant, Elizabeth Ford. This is a very important case for Elizabeth Ford. She is present in court with her husband. She is now the age of 57 years old, and by the time she reaches 65, pursuant to the plan in question, she should have received the total amount of $3.3 million. She worked as an engineer for many years at MCI, which then became WorldCom, which, as the Court probably is aware, filed for bankruptcy relief before the New York bankruptcy courts. Be that as it may, she went ahead, as a good conscientious employee, and paid the premiums that she thought were necessary to provide disability coverage. Let's talk first about whether or not this Court has jurisdiction over the appeal. Well, the Court has jurisdiction because it's pursuant to a Federal statute, the ERISA statute. Also, an issue was raised in the – I'm talking about the timeliness of it. The timeliness of the – there's no question that the appeal was timeless. The – we did not – I provided in the excerpts of records at pages 453 through 457 a sworn declaration from my former law clerk, Mark Williams, who is now an attorney with the Arizona Bar, that we did not receive the notice of ruling until approximately January 2, 2003. This was not even sent. This was faxed by a clerk. Subsequently, I believe, a copy was mailed. So under that standard, the appeal period wouldn't run until we received notification. I, myself, personally filed the notice of appeal on February 3, 2003, which is within the 30-day period because the period for the 30 days fell on the weekend, and my operation was carried forward. So I was very careful to timely file the notice of appeal. So it is our position that the Court does have jurisdiction to hear this appeal. Counsel, the difficulty is that this Court does not have authority to grant an extension of time. That has to be done by the district court, doesn't it? Well, Your Honor, I think that I'll – I think – well, then the Court – then this Honorable Court, if the Court feels strongly about it, should remand the matter, allow us to do that, because I think we did timely file our notice of appeal. Based on the fact that we filed it from the time we received notice, it was the error of the district court, and we did not get proper notice. And due process considerations require that we get proper notice. What case are you relying upon to support the position that if the Court does not give notice, then the Court of Appeal can remand for an extension of the notice of appeal period? Well, I don't have before me any case law that I can cite at this hearing. The difficulty is there seems to be a case to the contrary. N. Ray Hull Grant just seems to say that we don't even have the authority to remand to the district court for a determination of whether an extension was warranted. Our hands seem to be tied. Well, I would suggest to this Court that it would be highly manifestly unfair to deny this appeal based on a mistake made by the district court clerk. We did use due diligence. In retrospect, now that the Court is bringing this matter to my attention, perhaps we should have made an extension request to the district court, but we did file our appeal timely, in our opinion, when we received notice per the declaration of Mr. Williams. And we filed it within 30 days, and we lodged the declaration of Mark Williams as part of the record, the district court record. I agree with you that it's unfortunate that you were not notified. Well, I think the Court has to look at the equities involved and also the cardinal principle of the law under the 14th Amendment and 5th Amendments of due process of proper notice. Unfortunately, we're bound by our case authority, though. It appears that our precedent ties our hands in that regard. Well, I would believe that under the circumstances, this Court would have discretion to allow us to remand, but I think also that it would be fitting to allow this appeal to proceed because, again, we did timely file our notice appeal within 30 days. We could not, as a practical matter, have filed within 30 days of the Court's ruling because Judge King's clerk did not send us notice of the ruling. If I understand your argument, it's that you don't need an extension because time didn't start to run until you were notified. Right, and we got notified pursuant to the facts, and then subsequently, apparently, a notice was ruled out, was mailed out. Is there any authority for the fact that time wouldn't start running until you're notified? Under the rules for the state courts, I know that for an appeal period to run, you have to have a notice of entry of judgment, and apparently that's pretty clear in the rules, of course, for the California Courts of Appeal that govern that. What about the federal rules? I don't think there's a parallel federal rule, though. Well, then, maybe it's an oversight by Congress or by the legislature that promulgates these rules, but there has to be some sort of equitable situation where the Court is allowed to entertain an appeal when we don't get proper notice from the district court. In retrospect, I guess I thought that the fact that there was a minute order issued by the Court, which was the Court's order, that that was sufficient. If Judge King or his clerks failed to do a notice of entry of judgment or some similar document, in retrospect, that should have been done, but I don't think that an appeal should be just when we timely file our notice of appeal. And I think that I realize that the Court reserved that. Apparently, the Court reserved that issue, but I think that we did act diligently under the circumstances, and I think the date of the appeal runs from the effective notice. Counsel, if we rule that the notice of appeal periods are not in effect if the Court does not properly serve, do you think that might be widely relied upon? We'll be getting declarations from individuals saying that they didn't receive the notice of appeal, not just for this case, but for all the cases we have to consider. Would this open a whole new avenue for people to extend the appeal periods in federal cases? I don't know if it would or not, Your Honor. I would not think it would, because I think this is a unique situation where we didn't get notice. And I don't think… In that case, why doesn't Rule 4A6 of the Federal Rules of Appellate Procedure cover your situation, where it provides that the district court may reopen the time to file an appeal for a period of 14 days if the person has not received notice of the order? Well, again, Your Honor, I have to honestly tell you I'm not familiar with that rule. It says the district court may reopen the time to file an appeal only if all the following conditions are satisfied. The motion is filed within 180 days after the judgment order is entered, or within seven days after the moving party receives notice of the entry, whichever is earlier, and the court finds that the moving party was entitled to notice of the entry of judgment but did not receive the notice from the district court within 20 days, 21 days after its entry. And that's your situation, isn't it? Well, in retrospect, the motion should have been filed, but we did file our… I think the court has discredited that requirement. You think this court has discredited it? Yes, I do. I think that it's – I don't think that language – it doesn't sound to me like it's mandatory language. I think that you have to look at the equitable considerations, and I think that there was a fault on the part of the district court. In retrospect, it should have been done, but, again, the notice of appeal was timely filed per the notice. In retrospect, we should have filed a motion to get the district court to do what the court is suggesting in that rule, but I don't think – it doesn't sound to me like that's an ironclad rule because I think that you have to look at the overall equities of the situation, the circumstances of the situation. And I think this court should formally – in light of the circumstances, I think this court has discretion to say that the appeal was timely brought because we did file within 30 days of the notice. And I don't think it would open up a Pandora's box of people doing this. This is a unique situation where we didn't get the ruling, and I'm not so sure that Judge King – even though it was faxed to us as a courtesy by the clerk, I'm not so sure that the clerk ever even sent us the notice of ruling or the notice of entry of judgment by Judge King. So arguably, if that was not done, arguably, even if the court issued a ruling, there's still time to reassert the appeal and renew it because we never got that. Again, there's a provision for a motion, but I think that we could argue successfully that this court has discretion to look at the equities involved and allow the appeal to proceed. Please proceed on your argument on the merits. Thank you. The client, Ms. Ford, has attempted to collect unemployment benefits, and the State of California indicated that she could not collect it. She was unable to work, had a normal job, and that she should file for disability benefits. In other words, because of her condition, she cannot work a normal eight-hour day. Furthermore, she was examined at length by the Social Security Administration and granted full disability benefits. Then she went ahead and initially attempted to file a claim through her company plan. It was done in October 1995. We had to file a lawsuit to ascertain, because MCI wasn't cooperating, who the carrier for coverage was. It took years of protracted litigation to find that out. We finally found that out. Then the claims form was presented to the Hartford and the Claims Department, and they denied the claim. And therefore, we filed suit. Now, the appeal in question concerns whether or not we can sue the Hartford, even though MCI was the plan, on paper was the plan administrator. And I think the Court should look closely at the dissent of Judge Reinhart in the Eberhardt decision, because he cites a lot of case law for the proposition that a third-party insurer, who is legally responsible by contract, can be sued for a risk of benefits. And I believe, under the circumstances of this case, that that should be the standard adopted by this Court, and there should be a remand to the District Court for trial. It should be borne in mind that Ms. Ford hasn't been paid in IOTA benefits on her claim. If they were to pay it up to age 65, our economists have calculated damage of $3.3 million. It would be manifestly unfair to allow the ERISA statute to be used in a manner such that a beneficiary or an insurer under a policy cannot recover benefits. The purpose of the ERISA statute is to provide for benefits. It's not to escape legal liability on a technicality. Counsel, we are really in this predicament because of MCI's bankruptcy or kindness, because ordinarily that would be the source of her disability payment, would it not? The problem with that, even if MCI was in the case, MCI would only be on the hook for about two years of coverage, or approximately two years of coverage, which in effect would mean that Hartford would get out of it scot-free. And the cases, the Giraldi case cited, the Giraldi case cited by the respondent, isn't applicable because there was no third-party insurance company in that case. In the Eberhardt case, it's not applicable because there you have Mrs. Eberhardt was a widow. She did recover $200,000 or so in monies. It was more akin to a wrongful death case. And in addition, they signed a mutual release of any and all claims involving that insurance company. So Mrs. Eberhardt in that particular case did recover things. But in this case, what we're arguing, which I think is clear, that even if technically MCI was the plan administrator, you've got to look at the reality of the extensive purposes of the role of the Hartford in this case. The Hartford controlled completely and had unfettered discretion completely about the administrative claim. They decided whether to accept the claim or deny the claim. They accepted to delay the claim or not delay the claim. They accepted whether or not to give documents or not. Counsel, isn't there a distinction between a claims administrator and a plan administrator, with the former being liable and the latter not being liable? No, I believe that you have to look at the circumstances of this case. Let me ask you this question. If we determine that Hartford was a claims administrator, would Hartford be liable under ERISA? I believe that the court should determine that for all extents and purposes, whether you call the Hartford a claims administrator or a plan administrator, they were functioning as a plan administrator. Did you answer the question that I asked you? If we determine that Hartford was a claims administrator, is Hartford liable under ERISA? Yes, I still believe that would be the case. Now, what case authority are you relying upon to support your argument that even if we determine that Hartford is a claims administrator, it is nevertheless liable under ERISA? Okay. I'm citing this case of Foresight v. Humana, Inc., 114 Fed 3rd, 1467, 9th Circuit, 1970. I'm citing the case of Cisneros v. Unum Life Insurance Company, where ---- They stand for the proposition that a third-party insurance company or insurer, which is the case with the Hartford, can be sued for benefits. Yes. And whether you use the term plan administrator or claims administrator, the reality is that those cases stand for that proposition, and I believe that there should be ---- they should be followed. And I think this Court should take the courageous step of distinguishing between the ---- if they issue a ruling in favor, a repellent's favor, which I believe they should do, they should take the courageous step of clarifying what the Everhart and Girardi cases say that this case is factually distinguishable, because in this case, unlike those other cases, Mrs. Ford's fate was totally determined by the Hartford. It wasn't determined by MCI. MCI had very little involvement. They didn't even cooperate with her in giving her the proper claims format and telling her who the carrier was. If this Court was to send a message that she doesn't get coverage because of a technicality that the Hartford was not the plan administrator, if the Court sends that message, that means that people like Mrs. Ford that do their job as an engineer for years and years and years and pay their disability benefits don't get coverage. It makes a mockery of the ERISA statute. And I would point out, I'm just going to read just a short passage from the summary of benefits in the plan documents, which I cited in the summary judgment oppositions. This is from their own language, from the Hartford's own language. The claims administrators have been delegated by the plan administrator with the exclusive discretion, authority, responsibility, and right to interpret and construe the plan's terms, determine all questions of eligibility under the plan, and exercise the fullest discretion permitted by law regarding plan administration. The decisions of the claim administrators are final and binding. The claims administrator shall be deemed to have fully exercised such authority unless they abuse their discretion by acting arbitrarily and capriciously. Counsel, doesn't Eberhardt say the fact that an entity has claims administration responsibility doesn't render them liable for the payment of benefits under ERISA? Doesn't Eberhardt say that? Eberhardt is a factually distinguishable case from the issues in this case. In the Eberhardt case, the plan document did not give unfettered discretion to the plan. In the Eberhardt case, there was not the unfettered discretion that we have here with the plan documents at issue. The Eberhardt course did not have to address the fact that the insurance company was taking advantage of a person in Ms. Ford's position. That's why there was the case law that Judge Reinhart so capably cited. That was in the dissent, right? But I think that his arguments were well taken in the context of this case because the Eberhardt case was a different case. And also, he cited the Harris decision of the Supreme Court of the United States that said that 1132A1B of the ERISA statute was intended to be a broad remedy of redress. Now, again, in Eberhardt, the widow got paid a couple of hundred grand. In Eberhardt, it was more akin to a wrongful death case. In Eberhardt, there was a release of all claims with the insurance carrier. And in that particular case, the plan administrator controlled the functions of how Ms. Eberhardt was going to get paid. In this case, MCI had no involvement. The record shows, the administrative record shows that the Hartford was the one that set out to screw, to be blunt about it, to not pay Ms. Ford her benefits. So if this Court rules in Ms. Ford's – I guess Ms. Ford, what they're sending a message to the Hartford Insurance Company is, we can hire capable attorneys to go into court and cite one or two cases, and they can get away with ripping my client off. That's what it really comes down to. She paid the premiums. If MC – even if MCI was in this case, the Hartford should be – have owed fiduciary responsibilities and obligations towards my client. And this Court should be courageous enough to step up to the plate and distinguish this case on the facts from the Giroldi case and the Eberhardt case. They should step to the plate and say, this is the standard. We're not going to let an insurance company such as the Hartford, with their billions of dollars in assets, get away with – my client has a very serious disability. She was a hardworking engineer. She has two degrees. It was very difficult for her to become an engineer in her day and age. She put a son through college. She went to Duke University. She's one of the few engineers. She's a brilliant woman who deserves redress. She feels so strongly about it. She's here in court today with her husband. She's been fighting this case for seven years, and I have basically been fighting this case for seven years because I believe in her. Kelsey, your time has expired. We'll give you one minute for rebuttal. Thank you very much. May it please the Court. My name is Carolyn Knox, counsel for Hartford Life and Accident Insurance Company this morning. This appeal addresses one legal issue. There is the threshold issue that the Court raised with counsel for appellant that I'd like to briefly address, and that is whether or not this Court has jurisdiction over the appeal. As the Court correctly cited, federal rules of appellate procedure for A address when a notice of appeal must be filed. For A1, though, states that a notice of appeal must be filed within 30 days after entry of the appeal from judgment or order. Does that mean that as a trial lawyer, I've got to check with the clerk every 28 days to make sure I'm kept current? Actually, Your Honor. What's the burden on? Is the burden on the clerk to send it to me, or is the burden on me to check with the clerk? Generally, the counsel for the parties who have a pending motion will wait for the Court to give them notice. However, in this case, notice was not given for 77 days after the motion was taken under submission. But as the Court also correctly pointed out, there is federal rule of appellate procedure for A6, wherein a party who has not received notice of the order of judgment may seek an extension of time from the district court within which to file their notice of appeal. That statutory authority was not relied on by the appellant here. And, in fact, the federal rules of civil procedure state that lack of notice to the parties of the entry by the clerk does not affect the time for appeal. And that's federal rule of civil procedure 77D that is cited in our briefing. Your opposing counsel says we have discretion to give relief here in contravention of those rules. Is he right? Your Honor, I believe he is not correct in his argument. I believe that the federal rules of civil procedure and the federal rules of appellate procedure must be followed by the Court. Counsel, there's reference here to a minute order of which there's a copy and a statement that it was entered by the clerk. I don't have the docket in front of me. Was a separate judgment entered in the docket by the clerk?  Did that start the appeal time running under Rule 58 and 79A? I believe it does, Your Honor. There is a stamp here that states it is entered by the Court. It was entered on November 18, 2002, by the clerk for the U.S. District Court of the Central District of California. That is what was entered on that date? The minute, the civil minute order was. There was not a separate judgment. Interesting. There are some cases, I think, that say unless a separate judgment is entered, the appeal time doesn't start to run. Your Honor, plaintiff's counsel or, excuse me, appellant's counsel did not seek relief from Rule 4A1 and should have done so in order to properly bring his notice of appeal. Secondarily, I dispute appellant's counsel's argument that the notice of appeal was timely filed in any event. And if the Court were to excuse his failure to timely file the notice of appeal, the notice of appeal nonetheless filed 32 days after they received notice of entry of the judgment, and instead, they should have filed the notice of appeal within 30 days. Instead, they filed it within 32 days. So it should have been filed on January 31, February 2, falling on a Sunday. But the wording of the statute is very clear. It does state within 30 days. Ms. Knox, I want to follow up on Judge Canby's question. Does this minutes order entered by the clerk meet the separate document requirement of Rule 58 of the rules? Your Honor, I did not re-review Rule 58 before coming to court today. But this, I will briefly address what I believe the Court is seeking. This civil minutes general order is a multi-page order which apparently Judge King chose to use as his judgment on the Hartford's motion for summary judgment, and then requested that the clerk enter it. So it occurs – it appears to be an order or judgment under the rules. It appears to be, from your viewpoint, both an order and a judgment. Yes, Your Honor, because no separate document was filed. I don't think you want to say that. I think you want to say what was filed is the separate document. What was filed is the separate document. Your Honor. If I may proceed with the merits of the appeal? Please. The issue before the Court today is a threshold issue, a simple and straightforward issue, and it's a single issue of law which this Court will review de novo. The issue is whether or not a claims administrator who administers claims under an ERISA welfare benefit plan is a proper party in a claim for ERISA benefits under ERISA Section 502a1b. The answer is no, and the Hartford respectfully requests this Court affirm the district court's judgment granting summary judgment in the Hartford's favor and dismissing them from this case. We heard a lot about alter ego in the previous case that you heard the argument  Why isn't the Hartford here the alter ego of the designated plan administrator? Your Honor, the Hartford is an agent of the plan administrator and a named fiduciary under the plan documents in the summary plan description, which is before the Court. But the Hartford is not the MCI plan administrator's alter ego. There is no unity of interest in all of the other factors that are considered in the alter ego argument. But simply here, the Hartford is merely a claims administrator for long-term disability claims submitted under the terms of the MCI plan. With all of the discretion that the plan administrator has under the plan. Yes, Your Honor. The plan administrator very carefully crafted a summary plan description wherein it reserves to itself as the plan administrator, which, by the way, is the old MCI communications, now Worldcom. The plan administrator then very carefully delegated its discretion and authority to a benefits subcommittee, which is sited in Washington, D.C. The benefits subcommittee then very carefully granted its discretionary authority to the myriad claims administrators that perform administrative functions under the terms of the plan for the various welfare benefits. The MCI plan is not just about long-term disability benefits. There are claims administrators for medical claims. There are claims administrators for life insurance claims. There are claims administrators for accidental death and dismemberment claims. And there are claims administrators for long-term disability. The Hartford happens to be the claims administrator for long-term disability here. But in making determinations, they are made determination as first plan assets. This is a self-funded plan for the first 36 months. And in order for any participant to be entitled to benefits after the first 30 months, they must have already met that 30-month threshold, and the MCI plan will have paid out their plan assets to that individual. Counsel, would you agree under Everhart that if we determine that ITT Hartford was functioning as the plan administrator, that there would be liability under ERISA? To address the second part of your question, first, Your Honor, I believe you're asking if the court finds that the Hartford is, as claims administrator Functioning. Functioning as the plan administrator, would there be liability? The answer to that, I believe, is no. And the authority for my answer is ERISA section 502D2, which states that if there is a money judgment rendered by the court, in this case it would be the district court below, that judgment can be entered only against the plan as an entity. What about the language in Everhart that says section 1132A1B does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator? What do we do with that language then? Your Honor, I believe that that language, the last part of that sentence, has raised an issue that the court didn't intend to have raised. And Judge King addressed that in his order as well. There the court was saying that Allmerica did not function as a plan administrator because the plan administrator was Conseco, I believe is the name of the employer and the plan sponsor. But the converse of that would be true, too. If they were functioning as a plan administrator, there could be a suit for benefits against the insurance company. Your Honor, to reach that conclusion, you'd have to read out several provisions of the statute itself. First of all, under ERISA section 3, subsection 16A, small i, the term administrator is defined to mean the entity that is expressly designated in the document under which the plan is operated. And I refer to that in our Respondent's Brief. So the plan administrator is a defined term under the statute, and it means the entity that's expressly so designated. When you look to the plan document under which the plan was operated, which is the summary plan description that's before the court in the excerpts of record, you will see that the plan document expressly designates MCI as a plan administrator. But we can look beyond that to how the parties actually functioned to determine whether or not the designated claims administrator was actually functioning as a plan administrator. Could we? Your Honor, there are different duties and responsibilities associated with a claims administrator who merely administers claims versus a plan administrator. It does. Your Honor. But who ultimately is responsible for paying the benefits? The plan, right? The plan is responsible, yes, Your Honor. And the plan administrator, the subcommittee of the Human Resources Department at MCI, retains final authority. So even if I understand your argument correctly, even if your client Hartford was functioning as the plan administrator, any judgment for benefits can only be assessed against the plan as opposed to your client. You are correct, Your Honor. Yes, Your Honor. And that would mean that if even a suit, putting aside bankruptcy, even a suit against MCI or MoralCom, would still result in an entry of judgment against the plan in your view, right? Yes, and the MCI plan is a defendant in this action. The action against the plan is what is sued. I was thinking if you sue the plan administrator, not just the plan, you still get a judgment only against the plan in your view. Is that correct? Yes, Your Honor. And that is what the statute dictates under both a claim for benefits under Section 502A1B, which states that you can, a participant or beneficiary, can bring a claim for benefits under the terms of the plan, can clarify their right to benefits under the terms of the plan, and seek a judgment as to their entitlement to future benefits under the terms of the plan. And then you have subsection D1 and 2, which state that the plan is a legal entity with the capacity to sue or be sued. And then finally, that any judgment must be entered against the plan. Is there any circumstance under which a third-party insurer would be subject to suit in your view? A third-party insurer of a welfare benefit? An ERISA plan. There are two types of – Of a disability plan. Okay. Let's just go with that. Subject to suit. I don't think that the current state of the law needs to be changed in order for the insurer to be involved in the litigation. That ends up being a relationship or a contractual issue between the insurance company and the plan sponsor themselves. As I understand this lawsuit, the appointee is seeking to recover from your client, not from the plan. Is that correct? It's hard to know, Your Honor. I think that they would like to offer them a suit in a misguided belief that in order for a recovery to be had, that the Hartford must be a party to this lawsuit. So it's not your understanding that the plaintiff is seeking money from your client. It's your view that the plaintiff is seeking money still from the plan and not from Hartford as the insurer. The plaintiff has a claim for benefits under Section 502A1B, which would be against the plan. Okay. All right. That is the only relief available. I didn't understand that from – but maybe opposing counsel can enlighten us. I didn't understand that to be the argument he was making, but I'm sure he will enlighten us on his argument. It sounds like he would be quite content with a judgment against Hartford. I am sure you are correct, Your Honor. The problem is twofold here. First of all, the statute is very clear in that an order can only be entered or a judgment, money judgment can only be entered against the plan, number one. But number two, in order to get to the Hartford, because after the first 30 months that a participant actually receives benefits because they've been entitled to them, only after 30 months would the Hartford's policy kick in. So in order to get anything from the Hartford, there must be a determination of disability, a threshold determination of disability and entitlement to benefits for the first 30-month period. And you're – presumably Hartford makes that determination, is that right? With the final authority being the benefits subcommittee of the plan. Now, I'm an employee of MCI, and I file my claim with your client to be administered, and you tell me denied. What does the plan tell me I can do about that? The plan – within the plan document that, again, is before the court, you will see a directive to plan participants that if they don't agree with the decision, as a threshold issue, though, there must be an appeal, which is required under this – actually not under statute, but Ninth Circuit case law. An appeal would be had, presuming it's denied at the appeal. To where? Where would the appeal go? Back to the Hartford. The Hartford would adjudicate the appeal through the committee, and then a participant can ask the committee for an additional review if they disagree. But it never goes outside Hartford? It goes to the committee. Oh, the committee, which is in D.C.? Is that the D.C. committee you're talking about? Yes, Your Honor. And that's populated by whom? MCI. You have quite a representative sitting on that. Exactly. The summary plan description describes the types of individuals who were on that benefits subcommittee. I would like to – does the panel have any additional questions on this particular issue? No, I don't. I'd actually like to clarify and speak a little bit more directly to your question about when would an insurer be a possible defendant in a benefits action. The insurer never has to be a defendant in a benefits action. To name the plan would bring all appropriate relief to a participant. Quite often I'm standing here defending a plan because my actual client is the insurance company who has funded the benefit available under the plan and has assumed the defense of the plan. So quite often where you have a fully insured plan, it's actually the insurance company that is defending the lawsuit. They've acted as the claims administrator and the funding source. But you tell us this is a self-funded plan for the first 30 months? It is, Your Honor. And I think that makes it even more clear than Everhart did, because in Everhart it was a plan for life insurance benefits, which almost exclusively is a fully funded benefit. So the insurance company has issued a policy. In Everhart, the insurance company also acted as the claims administrator, which again is often what I am doing is defending the claims administrator in the name of the plan. But in MCI, the court found that the claims administrator could not be sued. The plan had to be sued, even though it was a fully insured benefit, because the statute is very clear. We have three statutory subsections which address the issue. The definition section, which I alluded to earlier, Section 3, subsection 16. You have the claim for benefits itself, which specifically states that you must sue the plan. And then you have D1 and D2 of Section 502, which states that the plan is the entity and the judgment has to be entered against the plan. But as far as the facts of Everhart, the plan and the plan administrator, who was also the employer, were dismissed because the plaintiff entered into a side agreement with them that had to do with outstanding compensation issues, not with a claim under the terms of the plan. So the release that was signed was a standard employment release because outstanding salary and other compensation were paid. That left the claims administrator, who also happened to be the insurer, but the Ninth Circuit, notwithstanding Judge Reinhart's dissent, was able to look to Jilardi v. Pertek, also Taft v. Equitable Life Assurance, and follow the law in finding that the claims administrator, even though they were the insurance company, was not the proper party. Relief could have been had against the plan. The discretion issue, I believe, is a red herring in Everhart. We don't know what the plan document said in Everhart. There's no discussion of the plan documents in Everhart. Counsel for Appellant also cited to Forsyth v. Humana and Cisneros v. Unum for the proposition that a claims administrator can be liable under ERISA. Neither case is on point. Both cases can be easily distinguishable. In Forsyth v. Humana, it was a claim with regard to a contract between Humana, who is the HMO, and provider of the medical benefit. There was a contract between Humana and health care providers negotiating the amount of the reasonable medical fee that would be charged. In that case, the Court found that Humana, in entering into contracts with other parties to provide them medical services, was acting as the plan administrator. In Everhart, there was no such finding. In Gilardi v. Pertek, there was no such finding. Counsel, your time has expired. Thank you, Your Honor. Thank you. Counsel, we'll give you one minute for rebuttal. Thank you very much. Briefly on the appeal issue, Ms. Knox has not, she has not stated that she received timely notice of a judgment. We're taking the position we filed within 30 days. The 30-day period fell on a legal holiday, which by operation law carries it forward. The appeal was timely filed. The motion mechanism referred to the Court is a mechanism to get an extension of time to do it. We timely filed. Due process requires notice. We timely filed. On the issue, if you look at the cases cited by Judge Reinhart in the dissent, it shows very clearly that a third-party insurance company can be sued. So you're seeking damages from Hartford as an entity. Right. That's what I thought. Let me explain something. MCI went bankrupt. Even if MCI was a party to this, it would not be correct of this Court, in my respectful opinion, to deny relief to my client, not remand, because otherwise Hartford would get off the hook. You have to bear in mind my client was disabled at age 45. Under the policy, she has a total of benefits until 65. If MCI is only on the hook, even if they hadn't gone bankrupt for two or three years, that means that Hartford is skating. And the record does not show that Mrs. Ford's claim was presented to any committee. It was a big joke. And you can look at the first amendment complaint with all the exhibits and the whole record and all the letters I sent to the claims department. We had to file a lawsuit. They said originally it was unit. She got no cooperation from MCI. So let me ask you a question. Opposing counsel says that any ERISA claim is only viable against the plan. That's not correct. There is case law, and it's cited by Judge Reinhardt in his dissent, that shows that you can sue a third-party insurer. He cited three or four cases which the Court can look in the decision. But even if you look at the majority in Everhart, and I'm going to quote this passage in closing, they said that a 1132A, 1B claim does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator. So using the majority's language in Everhart, this Court can rule, and it wouldn't be inconsistent to say if you can show by the evidence to defeat a summary judgment motion that the insurer in question, i.e. the Hartford, was functioning as the plan administrator, whether they were named as the plan administrator or not, we're talking about semantics, there should be liability. So this Court can adopt the majority passage from Everhart and apply that in its ruling in favor of my client. Thank you. So is any claim of any kind pending in bankruptcy? We elected not to pursue that. My understanding is MCI has been, Ms. Ford was an unsecured creditor. They've been discharged. There was a massive bankruptcy proceeding in the New York Bankruptcy Courts, and they've been discharged. And the plan gets into that bankruptcy as well. What's that? And the plan gets into that bankruptcy. The plan was in that, the reality of the plan, MCI controlled the plan. There was no assets to collect against the plan. That's why we have to go against the Hartford. That's all I want to know. And the plan, but the plan was named in the original lawsuit. And also in Giulardi, she relies on that. There was no insurance company involved in that case. Thank you. All right. Thank you. Thank you to both counsel for a case well-briefed and well-argued. The case just argued is submitted for a decision by the Court. The final case on calendar, the Glowie v. United States, has been removed. This completes today's session, and we are in recess. All rise.
judges: Canby, Hansen, Rawlinson